UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

FOLOSADE OLOFINLADE & )
FOLOSADE OLOFINLADE, next )
friend and parent of JANE DOE, )
ALIAS, A MINOR )
    Plaintiffs, )
)
v. ) C.A. No. 19-021-JJM-LDA
)
ATMED TREATMENT CENTER, )
INC.; TOWN OF JOHNSTON; )
JOSEPH CHIODO, in his capacity as )
Finance Director Town of Johnston, )
    Defendants. )
)

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., Chief United States District Court Judge.

Ms. Olofinlade, individually and on behalf of her minor daughter,[1] makes several claims in her Amended Complaint against Atmed Treatment Center, Inc. ("Atmed"), the Town of Johnston, and Joseph Chiodo in his capacity as Finance Director of Johnston ("Johnston"), rooted in race and national origin discrimination and intentional tort, arising out of an incident at Atmed Treatment Center where Ms. Olofinlade and her daughter were confined along with her ill brother-in-law for four hours because Atmed suspected he had Ebola.

Both Atmed and Johnston filed motions to dismiss instead of answers in response to Ms. Olofinlade's complaint. The Court determined that the complaint was deficient and directed Ms. Olofinlade "to amend her complaint to make specific,

---

[1] For ease, when the Court refers to "Ms. Olofinlade" as a plaintiff in this

plausible allegations above and beyond the bare elements of each claim and to specify which Defendants' conduct is implicated in each allegation." ECF No. 27. She filed an Amended Complaint (ECF No. 28) and both Atmed and Johnston renewed their motions to dismiss. ECF Nos. 32, 33. Ms. Olofinlade objects, arguing that her pleading is sufficient, and discovery should proceed. ECF Nos. 41, 42. Staying faithful to the standard of review under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court DENIES both motions.

I. BACKGROUND

On July 4, 2015, Ms. Olofinlade's brother-in-law sought treatment at a very busy and close-to-capacity Atmed for a headache, fever, and vomiting. He had recently returned from visiting another country and had a history of malaria. Ms. Olofinlade, who was not ill, arrived at Atmed to help him, bringing her 2 ½ year old daughter. Ms. Olofinlade is a Black female and her national origin is Nigerian. She is a Nurse Practitioner. She was thirty-eight weeks pregnant at the time of this incident.

Atmed told Ms. Olofinlade that her brother-in-law would be transferred to the emergency room once his labs posted. Ms. Olofinlade informed Atmed that he had a history of malaria and that was most likely what he was experiencing. Atmed acknowledged that it was discussing malaria as a diagnosis. Neither Ms. Olofinlade nor her daughter complained of, exhibited, or reported symptoms of any illness. Ms. Olofinlade alleges that Atmed was concerned that her brother-in-law had Ebola so alerted the health authorities and sequestered her, her brother-in-law, and her

daughter in an exam room. Johnston transferred all three individuals under hazmat protocols to Rhode Island Hospital. Ms. Olofinlade alleges that Defendants responded in this extreme way because of their race and national origin, not because of his symptoms and recent foreign travel.

Ms. Olofinlade alleges that she and her daughter were denied access to food and water for between four and six hours. They were denied permission to leave the enclosed room in which they were sequestered with her brother-in-law for any purpose, including to use the restroom. Ms. Olofinlade saw a white Atmed employee tell someone on the telephone that Atmed might have its first case of Ebola. She also overheard an Atmed staff member state on the telephone "I'm not even lying to you, this Black girl and her family from Nigeria have Ebola."

Johnston subsequently commenced handling the transfer to Rhode Island Hospital under "hazmat" protocol. Johnston blocked the entrance and exit to the Atmed building. No other patients, staff, or members of the public present at the Atmed facility were transferred to Rhode Island Hospital under hazmat protocol. At least six representatives from Johnston, all of whom were dressed in full "hazmat" decontamination suits and protective equipment. Johnston forced Plaintiffs to wear "hazmat" decontamination masks in preparation for transport to Rhode Island Hospital without explanation. When they arrived at the hospital, Ms. Olofinlade informed hospital staff that both she and her daughter were not patients. At this point, all hazmat gear was removed. They were not confined and were free to leave. The patient was not diagnosed with Ebola.

Ms. Olofinlade filed this suit for violations of the Rhode Island Civil Rights Act, intentional infliction of emotional distress, and false imprisonment against both Defendants and for violations of Title VI of the Civil Rights Act, negligence and premises liability, and a violation of the state discriminatory practices in public accommodations act against Atmed only. Through those claims, she alleges that she and her daughter have suffered psychological and emotional damages, specifically stress, anxiety, confusion, panic, and physical and emotional symptoms. Both Johnston and Atmed have moved to dismiss.

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) tests the plausibility of the claims in a plaintiff's complaint. "To avoid dismissal, a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *García-Catalán v. United States*, 734 F.3d 100, 102 (1st Cir. 2013) (quoting Fed. R. Civ. P. 8(a)(2)). At this stage, "the plaintiff need not demonstrate that she is likely to prevail, but her claim must suggest 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* at 102–03 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"The plausibility inquiry necessitates a two-step pavane." *García-Catalán*, 734 F.3d at 103. "First, the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations

4

(which need not be credited).'" *Id.* (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)). "Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)). "In determining whether a complaint crosses the plausibility threshold, 'the reviewing court [must] draw on its judicial experience and common sense.'" *Id.* (alteration in original) (quoting *Iqbal*, 556 U.S. at 679).

### III. DISCUSSION

Ms. Olofinlade sued Johnston for violations of the Rhode Island Civil Rights Act, False Imprisonment, and Intentional Infliction of Emotional Distress. Ms. Olofinlade alleges that Atmed called Johnston EMS, six rescue personnel arrived in hazmat gear, blocked the doors at the Atmed, required Ms. Olofinlade, her daughter, and brother-in-law to put on hazmat masks, and transported all three of them to Rhode Island Hospital. She alleges that there was no reason to do so other than a stereotypical perception based on their race and national origin. Both Defendants have filed motions to dismiss all the claims against them based on statutory immunity and on a failure to state a plausible claim. The Court will discuss immunity first and then each claim in turn.

First, Defendants argue that they are immune from liability pursuant to R.I.G.L. § 23-4.1-12, which provides immunity for any act or omission in connection with rendering emergency medical services or aid "unless the act or omission was the result of gross negligence or willful misconduct." *See Contois v. Town of W.*

*Warwick*, 865 A.2d 1019, 1023 n.5 (R.I. 2004). Rhode Island trial courts have defined gross negligence as "'the intentional failure to perform a manifest duty in reckless disregard of the consequences.'" *Marcouz v. H.P. Leasing, Inc.*, No. PC NO. 86-4519, 1987 WL 859604, at *1 (R.I. Super. July 23, 1987) (quoting Black's Law Dictionary 931 (5th ed. 1979).

It is clear from the Amended Complaint that Ms. Olofinlade's allegations are sufficient to allow discovery on whether Defendants' conduct was grossly negligent as required to overcome the statutory immunity provided by R.I.G.L. § 23-4.1-12. Discovery could support her claim that the discussion between Atmed staff and Johnston EMS and decision-making was improper, racially motivated, and resulted in their confinement and emotional distress. The Court thus finds that Defendants' arguments to dismiss the case based on immunity are premature.

## A. STATUTORY CLAIMS ALLEGING DISCRIMINATION

### Counts I, V & VI – R.I. Civil Rights Act (Both) And Title VI of The Civil Rights Act (Atmed) and R.I. General Laws § 11-24-1 (Atmed)

Ms. Olofinlade asserts that Defendants violated her civil rights under Rhode Island's Civil Rights Act ("RICRA"), R.I. Gen. Laws §§ 42-112-1 *et seq*, Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d and R.I. General Laws § 11-24-1. Title VI provides that "[n]o person...shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. RICRA similarly protects against discrimination

6

based on one's "race, color, religion, sex, disability, age, or country of ancestral origin." R.I. Gen. Laws § 42-112-1. R.I. General Laws § 11-24-1 prohibits discrimination, providing that "all persons are entitled to full and equal accommodations, advantages, facilities, and privileges of any place of public accommodation, resort or amusement." Both Atmed and Johnston move to dismiss these claims on procedural and substantive grounds.[2]

The Court looks to federal law construing analogous civil rights statutes in assessing discrimination claims under RICRA. *See Colman v. Faucher*, 128 F. Supp. 3d 487, 491 n.8 (D.R.I. 2015) (citing *Casey v. Town of Portsmouth*, 861 A.2d 1032, 1037 (R.I. 2004). Ms. Olofinlade's RICRA and Title VI allegations mirror each other so the analysis and outcome are the same.[3]

---

[2] Atmed argues that Ms. Olofinlade's Title VI claim should be dismissed because that statute requires that Atmed receive "federal financial assistance" and that she be an intended beneficiary of Atmed. Atmed also argues that she did not exhaust her administrative remedies as § 11-24-1 requires because she asserted no claim for public accommodation discrimination in her Rhode Island Human Rights Commission claim. It also argues that this claim is also untimely because she failed to assert the public accommodation claim within 90 days of her receipt of the Notice of Right to Sue letter because she did not include this claim in her original complaint. The Court does not see these as hurdles for the Plaintiffs at this time; discovery is required on these questions.

[3] In addition to arguing that this claim should be dismissed because her allegations are insufficient, Defendants also argue that the RICRA claim is not appropriate here because it is usually applied in the employment context or at least in contexts where there is a contract between the parties. On this point, case law counsels that liability under RICRA is not limited to employers; it has been broadly construed to extend liability to any individuals who violate the statute through discriminatory conduct. *See Khattab v. Smith Barney*, No. C.A. 14-261 ML, 2015 WL 1213181, at *2 (D.R.I. March 17, 2017) (finding that RICRA is an analog to 42 U.S.C. § 1981 and neither statute expressly limits liability to employers).

Turning to the complaint allegations, the Court finds that Ms. Olofinlade has pleaded enough facts to make out discrimination claims at this stage. She generally alleges that "Defendants unlawfully subjected Plaintiffs to discriminatory conduct and treatment, as described above, because of Plaintiffs' race, color and national origin. But for the Defendants' intent to discriminate against Plaintiffs because of their race, color, national origin, Defendants would not have engaged in the unlawful conduct described in the preceding paragraphs." ECF No. 28 at ¶¶ 47-48; *see also id.* at ¶¶ 112-118. Specifically, she details the actions each Defendant took during that day, alleging that they based their decisions to quarantine forcibly her and take her to the hospital on her race and national origin, not on any of their actual physical symptoms or the lack thereof.

And while Atmed and Johnston both dispute that race or national origin played a part in their decision-making, Ms. Olofinlade alleges that Defendants' conclusion that her brother-in-law had Ebola in the face of her qualified medical opinion that he probably had malaria was solely because he is Black and from Africa. Atmed and Johnston's decision to quarantine her and her daughter with him, treat them under hazmat protocols, and take them all to the hospital even though only he was sick was also based on race and national origin. This is sufficient to allow discovery on these civil rights discrimination claims so Atmed's and Johnston's motions to dismiss are DENIED.

### B. STATE LAW TORT CLAIMS

#### 1. Count II—Negligence/Premises Liability (Atmed)

To state a claim for premises liability, Ms. Olofinlade must show that Atmed "failed to exercise reasonable care for the safety of persons reasonably expected to be on the premises *** includ[ing] an obligation to protect against the risks of a dangerous condition existing on the premises, provided the landowner knows of, or by the exercise of reasonable care would have discovered, the dangerous condition." *Kurczy v. St. Joseph's Veterans Ass'n, Inc.*, 820 A.2d 929, 935 (R.I. 2003) (quoting *Tancrelle v. Friendly Ice Cream Corp.*, 756 A.2d 744, 752 (R.I. 2000)).

Ms. Olofinlade alleges that Atmed had a duty to protect her and her child's well-being while they waited for their ill family member, but instead Atmed placed them all in a room for hours, exposing her and her daughter to Ebola, a highly dangerous condition with which Atmed suspected the family member was infected. This is sufficiently plausible to state a claim against Atmed.

### 2. Count III—Intentional Infliction of Emotional Distress (Both)

A successful intentional infliction of emotional distress claim requires that "(1) the conduct must be intentional or in reckless disregard of the probability of causing emotional distress, (2) the conduct must be extreme and outrageous, (3) there must be a causal connection between the wrongful conduct and the emotional distress, and (4) the emotional distress in question must be severe." *Champlin v. Washington Trust Co. of Westerly*, 478 A.2d 985, 989 (R.I. 1984). Defendants argue that Ms. Olofinlade's claim fails because their separate conduct was consistent with state and federal guidelines for dealing with potential Ebola infection. They argue

9

that her allegations of extreme and outrageous conduct are conclusory and not plausible.

Turning to the complaint, Ms. Olofinlade alleges that Atmed placed her and her daughter in a small room with a person it suspected to have Ebola for hours without food, water, or bathroom access. She alleges that Johnston EMS personnel made them wear hazmat masks and took them to the hospital without explaining the reasons or justification for doing so. The Court finds that at this stage, this enough to state a claim sufficiently for intentional infliction of emotional distress under Rule 12(b)(6).

### 3. Count IV-False Imprisonment (Both)

To state a claim for false imprisonment, Ms. Olofinlade must prove that Defendants intended to confine her, she was conscious that she was confined, she did not consent to being confined, and the confinement was not otherwise privileged. *Morales v. Chadbourne*, 235 F. Supp. 3d 388, 404 (D.R.I. 2017). Defendants argue that the confinement was privileged because it was driven by state and federal protocols set for dealing with potential Ebola cases.

Ms. Olofinlade alleges that she was falsely imprisoned against her will at Atmed because she exhibited no symptoms of Ebola and Atmed knew she was a medical practitioner who arrived at the facility, not because she was sick, but to assist her family member. She alleges that Johnston EMS falsely imprisoned her by transporting her to the hospital even though she was not sick. She alleges that her detention was based on her race and/or national origin and was not privileged.

These factual allegations meet the 12(b)(6) threshold sufficient to allow the Court to deny Defendants' motions.

## IV. CONCLUSION

Ms. Olofinlade's Amended Complaint survives Rule 12(b)(6) scrutiny so the Court DENIES both Defendants' Motions to Dismiss. ECF Nos. 32, 33.

IT IS SO ORDERED.

John J. McConnell, Jr.
Chief Judge
United States District Court

April 10, 2020